IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LARRY A. BUKACEK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-13-1058-HE |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
|   Acting Commissioner of Social | ) | |
|   Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Procedural and Medical Background

Plaintiff filed an application for Title II benefits on February 25, 2011.[1] (TR 117).

---

[1] Plaintiff filed a previous application for benefits that was initially denied on July 23, 2009. (TR 142).

1

Plaintiff alleged that he became disabled on January 1, 2008, due to left leg, chest pain, breathing, and left elbow impairments. (TR 145). He has a twelfth grade education. (TR 145).

The record shows that Plaintiff was ascribed a 6.4 percent disability due to heat exhaustion in 2004 by the Oklahoma Workers' Compensation Court. (TR 121). In November 1995, Plaintiff was ascribed a 23 percent disability to his left upper extremity and 10 percent disability to his left hand due to carpal tunnel syndrome by the Oklahoma Workers' Compensation Court. (TR 122). Plaintiff's wife reported Plaintiff had previously fractured both ankles and had undergone surgery on his left elbow. (TR 170, 185). Plaintiff reported he had undergone two previous ankle operations in which pins were inserted in each ankle. (TR 173, 221).

In October 2008, while Plaintiff was working underneath an automobile, the car fell onto his chest. (TR 214, 221). He was transported to a hospital and treated for a crush injury to his chest, four rib fractures, pulmonary contusions, pneumonia, and a left knee ligamentous injury. (TR 216). MRI testing of his left knee showed tears of the anterior cruciate ligament ("ACL"), medial collateral ligament ("MCL"), and meniscus. (TR 235). He was also diagnosed with a closed head injury and anoxic brain injury. (TR 215). Plaintiff was discharged eleven days later in stable condition and wearing a knee brace. (TR 218-219).

In November 2008, Plaintiff sought treatment for his left knee injury from an orthopedic specialist, Dr. Holden, who prescribed a hinged knee brace and physical therapy for two weeks pending review of MRI reports. (TR 288). A physical therapist noted in

2

November 2008 that Plaintiff was "self-employed as a truck driver mainly transporting used car and car parts" and that he was using "a hinged knee brace on the left which [was] locked into straight extension." (TR 275). In November 2008, Plaintiff was seen by a physician for follow-up treatment after his hospitalization. Plaintiff complained of chest pain but reported he was "otherwise doing well." (TR 394).

In December 2008, Dr. Holden performed an arthroscopic procedure on Plaintiff's left knee to repair the ACL and meniscus. (TR 284). Plaintiff attended four physical therapy sessions following the surgery. (TR 262). However, his therapist noted in February 2009 that Plaintiff voluntarily chose not to continue physical therapy due to work commitments and financial resources. (TR 261).

In February 2009, Dr. Holden noted that Plaintiff exhibited good range of motion in his left knee and was doing fairly well. (TR 282). Dr. Holden noted Plaintiff had significant effusion to his knee, and Dr. Holden aspirated the knee. (TR 282). In March 2009, Dr. Holden noted that Plaintiff exhibited very good range of motion, good extension, and excellent stability in the left knee. The physician prescribed anti-inflammatory medication and advised Plaintiff he could "work as tolerated." (TR 281). In April 2009, Plaintiff reported he was working at a job "loading and unloading." (TR 280). Dr. Holden advised Plaintiff to continue the medication, use ice on the knee to relieve some mild swelling, and consider using a brace because of his active job activities. (TR 280).

In December 2011, Plaintiff underwent an initial psychiatric evaluation conducted by Dr. Ardis. (TR 400-410). Dr. Ardis' diagnostic assessment was bipolar disorder not

3

otherwise specified ("NOS") and generalized anxiety disorder. (TR 408). Mood-stabilizing medications were prescribed.

At the time he filed his application, Plaintiff was working part-time as a self-employed scrap metal recycler, and Plaintiff stated he began this work on January 1, 2010. (TR 137). The agency determined that this work did not constitute substantial gainful activity. (TR 140).

Plaintiff's insured status for Title II benefits expired on March 31, 2010. (TR 141). At that time, Plaintiff was almost 60 years old (with a birth date of June 7, 1950). To be entitled to receive disability insurance benefits, Plaintiff must show that he was "actually disabled" within the meaning of the Social Security Act prior to the expiration of his insured status on March 31, 2010. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

At a hearing conducted on April 20, 2012, before Administrative Law Judge McClain ("ALJ"), Plaintiff testified that he had taken medications for bipolar disorder, anxiety, and depression for 10 years and that he was being treated by Dr. Ardis and had previously been treated by Dr. Close for his mental impairments. (TR 33). Plaintiff stated that as a result of his injuries in October 2008 he had shortness of breath once a week, his left knee was painful and would "go out" on him, and he had difficulty bending, stooping, and squatting. Plaintiff stated he also had tingling in his hands. Plaintiff estimated he could sit for three hours, stand

for four hours, walk about two blocks, and he could carry 20 pounds on a frequent basis and lift 50 pounds occasionally. (TR 38).

Plaintiff testified he previously worked as a mechanic, driver, and trash collector. (TR 38-39). Plaintiff described the trash collector job as picking up trash and loading it on a truck. Plaintiff stated that part of the time period that he worked as a trash collector he was also a "relief driver," although besides driving the truck he was still "pulling the containers to the truck, hooking them up, and dumping them." (TR 39). Plaintiff stated he also previously worked for a construction company as a painter and window caulker. A vocational expert ("VE") testified at the hearing.

The ALJ issued a decision on May 22, 2012. (TR 13-20). Following the agency's well-established sequential evaluation procedure, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 1, 2008. At step two, the ALJ found that Plaintiff had severe impairments of status-post surgery on the left knee and both ankles. The ALJ found that Plaintiff's medically determinable mental impairments due to bipolar disorder NOS and generalized anxiety disorder were not severe as they had resulted in only mild functional limitations.

At the third step, the ALJ found that Plaintiff's impairments did not satisfy or medically equal the requirements of a listed impairment. At step four, the ALJ found that through the date Plaintiff was last insured for benefits he had the residual functional capacity ("RFC") to lift and/or carry 50 pounds occasionally or 25 pounds frequently, he could stand and/or walk for at least 6 hours in an 8-hour workday, and he could sit for 6 hours. (TR 16).

5

The ALJ found that in light of this RFC for work Plaintiff was able to perform his past relevant work "as a trash collector . . . as actually performed." (TR 18). Alternatively, the ALJ found at step five that Plaintiff had the ability to perform jobs available in the economy given his age, education, work experience, and RFC for work, including the jobs of hand packager and laundry worker, as described by the VE at the hearing. (TR 19). Based on these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act through the date he was last insured for benefits. (TR 19). The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052

6

(citations, internal quotation marks, and brackets omitted).

III. Step Four - Past Relevant Work

Plaintiff contends that the ALJ erred at step four in finding that he was capable of performing his previous job as a trash collector. Specifically, Plaintiff contends that the ALJ failed to make the requisite findings concerning the physical demands of Plaintiff's past work and, even assuming that the ALJ properly relied on the VE's testimony concerning those demands, that testimony was erroneous. The Commissioner responds that the ALJ's step four findings were based on the VE's testimony which described Plaintiff's previous job as a combination of two jobs, a trash collector and a trash truck driver, and the ALJ could properly rely on the VE's testimony that an individual with Plaintiff's RFC for medium work could perform "the trash collection job as Plaintiff actually performed it." Brief in Support of the Commissioner's Decision, at 5.

In the ALJ's decision, the ALJ made a finding at step four that Plaintiff was capable of lifting and/or carrying 50 pounds occasionally and 25 pounds frequently. (TR 16). This finding, as the ALJ later stated in the decision, represents a finding that Plaintiff was capable of performing medium work. (TR 19). See 20 C.F.R. § 404.1567©. The ALJ further stated: "In comparing the claimant's residual functional capacity with the physical and mental demands of this work [as a trash collector], the undersigned finds that the claimant was able to perform it as actually performed." (TR 18).

At the fourth step of the evaluation process, the ALJ must determine whether the claimant retains the RFC to perform the requirements of all past relevant work. The ALJ

7

must undertake a three-phase analysis at step four. In the first phase, the ALJ must evaluate the claimant's mental and physical RFC. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008)(quotations and citation omitted); Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). RFC represents "the most [that the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).

In the second phase, the ALJ must determine the mental and physical demands of the claimant's past relevant work. Bowman, 511 F.3d at 1272 (quotations and citation omitted); Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007); Social Security Ruling 82-62, "Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in General," 1982 WL 31386, at *4 (1982). In this phase, the ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." Social Security Ruling 82-62, 1982 WL 31386, at *3; see Frantz, supra.

In the third phase, the ALJ must "determine[] whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Winfrey, 92 F.3d at 1023 (citations omitted). The claimant bears the burden of proving an inability to perform the duties of the claimant's past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993).

In this case, the ALJ made no findings regarding the mental and physical demands of Plaintiff's previous job as a trash collector. Even assuming the ALJ was relying on the VE's testimony at the hearing, this testimony inaccurately described Plaintiff's statements concerning the exertional requirements of his previous work as a trash collector, and

therefore the ALJ could not rely on that testimony to support the step four decision.

The VE testified at the hearing that Plaintiff's previous job as a trash collector was unskilled work that is "generally listed as very heavy work." (TR 42). The VE went on to state that Plaintiff "reported medium exertion." (TR 42). This statement is not an accurate description of Plaintiff's statements concerning this job. In the record, Plaintiff stated that he had been a "trash truck driver" for the city of Enid, Oklahoma for two days in 2004. (TR 146). Plaintiff also stated that he had been a mechanic and trash truck driver/ laborer for Northrop from 1989 to 2001. (TR 155, 157). In describing his two previous trash collector positions, Plaintiff stated that he frequently lifted 50 pounds or more in each of these jobs. (TR 156, 157).

During the hearing, Plaintiff stated that when he worked for Northrop he performed the driver and manual laborer positions (which he described as picking up the trash and loading it onto the truck) together. (TR 38-39). He stated he worked "on the trash truck" for six years. (TR 39). He testified that he was sometimes a "relief driver" but even when he was a "relief driver" he also had to "pull[ ] the containers to the truck, hook[ ] them up, and dump[ ] them." (TR 39).

Plaintiff's description of this work clearly falls within the category of heavy or very heavy, not medium, work. See 20 C.F.R. §§ 404.1567© - (e). The VE's testimony to the contrary was erroneous, and the ALJ could not rely on the VE's testimony to support the finding that Plaintiff's previous position as a trash collector "as he performed it" was medium work. Further, the ALJ failed to make the requisite findings in the decision concerning the

9

physical demands of Plaintiff's previous job. Thus, the ALJ's step four decision is flawed.

IV <u>Steps Four and Five - RFC</u>

Plaintiff also contends that there is not substantial evidence to support the ALJ's RFC finding of the ability to perform medium work. Plaintiff testified at his administrative hearing that he was able to carry 20 pounds on a frequent basis and lift 50 pounds occasionally. (TR 38). In finding that Plaintiff had the RFC to perform the requirements of medium work, the ALJ noted that Plaintiff's treating physicians had not placed any limitations upon him. The record provides substantial evidence to support this reasoning.

To support his contention of error, Plaintiff points to a letter authored by Plaintiff's treating orthopedic surgeon, Dr. Holden, in November 2009 as evidence that Plaintiff's knee was not stable. In this letter, Dr. Holden stated that the letter was intended to provide information regarding "the necessity for surgery" on Plaintiff's knee. (TR 279). Dr. Holden stated that he had cared for Plaintiff in November 2008 concerning Plaintiff's "combined" knee injury to the ACL, MCL, and meniscus. The surgeon noted it was "well documented over the decades" that this type of injury "represents continued instability to the knee, and usually leaves the patient with a functional deficit" and that "surgical reconstruction of the [ACL] is the best alternative for treatment of this particular combined injury, and also dealing with the medial meniscus is also essential. The [MCL] can usually be left alone, as long as the anterior cruciate is reconstructed at a reasonable time frame after the injury." Dr. Holden further stated that the surgical reconstruction procedure he performed on Plaintiff's knee was "satisfactory [sic] without difficulties, and in my opinion was essential, and I saw no option

10

for conservative care or any other type of care in this particular situation."

Dr. Holden did not state, as Plaintiff contends, that Plaintiff's injury would result in recurrent instability of the knee. Rather, Dr. Holden stated in the letter that he was providing an explanation of his reasons for operating on Plaintiff's knee, and one of those reasons was because conservative treatment alone generally resulted in "permanent recurrent instability" of the knee. (TR 279). However, Dr. Holden did not state, as Plaintiff suggests, that Plaintiff's knee would be susceptible to recurrent instability following the successful operation performed by Dr. Holden.

Dr. Holden's notes of treatment of Plaintiff following the December 2008 surgical procedure confirm Dr. Holden's reasoning and the successful outcome of the surgery. Dr. Holden noted in March 2009 that other than some swelling Plaintiff's knee had progressed to the point he could work "as tolerated." (TR 281). Dr. Holden noted in April 2009, just four months after the surgery, that Plaintiff was working in a job that required him to load and unload objects and that Plaintiff's knee showed "excellent stability and good range of motion." (TR 280). Dr. Holden suggested Plaintiff might need a knee brace because he had "become so aggressively active" at his job and possibly a cortisone injection to "quiet down" the slight swelling in the knee, but the only directive was that Plaintiff continue taking anti-inflammatory medication and return in six weeks.

Furthermore, Plaintiff voluntarily stopped attending physical therapy sessions in January 2009, just one month after his surgery. (TR 261). The physical therapist reported that at that time Plaintiff was, understandably, walking with an antalgic gait and showing

11

some muscle weakness and decreased range of motion in his knee. (TR 261). However, Dr. Holden noted in March 2009 that Plaintiff's knee exhibited good range of motion and excellent stability. (TR 281).

Dr. Holden did not find that Plaintiff's knee had resulted or even could result in permanent functional limitations. The ALJ was not required to evaluate any medical opinion by Dr. Holden concerning Plaintiff's functional limitations because the record is devoid of such an opinion. Finally, the ALJ did not ignore probative evidence in the medical record. Because there is substantial evidence in the record to support the ALJ's physical RFC finding for medium work, the finding should not be disturbed.

The ALJ found in the decision that Plaintiff had medically determinable mental impairments of bipolar disorder NOS and generalized anxiety disorder. Following the agency's well-established evaluation procedure for mental impairments, the ALJ found that Plaintiff's mental impairments were not severe as they had resulted in only mild functional limitations. Plaintiff contends that the finding of nonsevere mental impairments is not supported by substantial evidence in the record. Plaintiff points to "new records" of treatment he submitted with his request for review of the ALJ's decision.

The record shows Plaintiff submitted three pages of records with his request for review. Two of those pages consist of a discharge summary indicating Plaintiff had been admitted to a hospital for three days in 2003, long before he contended he became disabled, for psychiatric treatment for depression. (TR 414-415). This record reflects that Plaintiff was admitted for treatment, he was placed on medications, his depression improved, and he was

discharged. The Appeals Council did not err in failing to discuss this evidence as the brief and remote hospital discharge summary note does not indicate the presence of a persistent, severe mental impairment.

A third page of "new records" submitted by Plaintiff consists of a one-page letter authored by Dr. Close, a clinical psychologist, dated July 12, 2012. (TR 413). In this letter, Dr. Close states that he evaluated Plaintiff in July 2009 and that Plaintiff "appeared quite depressed." However, Dr. Close also states in the letter that at that time Plaintiff's "motivation and persistence in pursuing treatment" for his depression was "questionable" as it appeared Plaintiff's "appointments ha[d] been made largely at his wife's urging over the past few years." (TR 413).

In the Appeals Council's notice of its decision, the Appeals Council noted that it had considered the additional evidence submitted by Plaintiff but found that it did not provide a basis for altering the ALJ's decision. (TR 1-2). The one-time psychological evaluation of Plaintiff by Dr. Close in July 2009, as summarized in Dr. Close's July 2012 letter, does not appear to have been followed up with ongoing treatment for depression or other mental impairments. There is no evidence in the record that Plaintiff persistently sought treatment for a mental impairment prior to the expiration of his insured status, and Plaintiff points to no such records of treatment. The Appeals Council did not err in failing to expressly consider this one-page summary of Dr. Close's July 2009 evaluation of Plaintiff.

Plaintiff next argues that he "suffered an organic brain injury when he was deprived of oxygen at the time of his accident in 2008" and that the ALJ erred in failing to include

13

limitations in the RFC resulting from this injury. Plaintiff's Opening Brief, at 15. However, other than an initial assessment by an examining physician that Plaintiff had a "[c]losed head injury" and "[a]noxic brain injury" resulting from the October 2008 accident (TR 214-215), the record does not indicate that Plaintiff's treating physicians found any brain injury of a sustaining or significant nature following the accident. The discharge summary concerning Plaintiff's course of hospital treatment includes a diagnostic assessment without mention of a brain injury. (TR 216). Accordingly, the Appeals Council did not err in failing to expressly consider the additional evidence submitted by Plaintiff, and the ALJ did not err in failing to consider or include functional limitations with respect to a "brain injury." There is substantial evidence in the record to support the ALJ's finding that Plaintiff's mental impairments were not severe.

The ALJ determined at step five that Plaintiff was not disabled within the meaning of the Social Security Act as he was capable of performing other jobs available in the economy. The ALJ relied on the testimony of the VE to reach the step-five determination, and the VE's testimony provides substantial evidence to support the decision. Consequently, the ALJ's step four error is harmless, and the alternative step-five decision should be affirmed. See Bales v. Colvin, __ Fed. Appx. ___, 2014 WL 3973515, *5 n. 4 (10th Cir. 2014)(unpublished op.)(noting any error at step four decisionmaking would be harmless given alternative, valid step-five determination).

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter

AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before October 27th, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 6th day of October, 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE